POCANTICO WATER-WORKS CO. *v.* BIRD *et al.*, Commissioners, etc.

*(Supreme Court, General Term, Second Department.    February 11, 1889.)*

WATER COMPANIES—DIVERSION OF STREAM—INJUNCTION.

Plaintiff organized as a corporation for the purpose of supplying water to villages, under Laws N. Y. 1873, c. 737, authorizing the acquisition of riparian rights for that purpose. After acquiring rights above and below the lands of H., on the river intended as the source of supply, and expending large amounts in the construction of reservoirs and dams for its purposes, and after negotiating in vain with H. for his water rights, and beginning condemnation proceedings, defendants, water commissioners of a village which was supplied with water by plaintiff, proposed to acquire H.'s water rights and erect a dam and reservoir on his land. These rights were necessary to plaintiff, and to allow defendants to divert the water at that point would greatly injure plaintiff. *Held,* that defendants should be enjoined from so doing, as plaintiff's franchise would be practically destroyed by permitting defendants to carry out their plans.

Appeal from special term, Westchester county.

[1] L. R. 12 Q. B. 443.

Plaintiff is a corporation organized under Laws 1873, c. 737, providing for such companies, for the purpose of supplying water to cities and villages. Said act (section 3) provides that "said corporation shall have power to take, hold, and occupy any of the waters of this state, provided that nothing in said act shall be deemed to infringe upon any private right which shall not have been secured by said corporation." Laws 1876, c. 415, § 2, supplementary to said act, provides that, before entering upon or taking and using any land for the purposes of the act of 1873, the corporation shall cause a survey and map to be made of the land intended to be taken. Corporations so created are, by the last mentioned act, authorized to acquire, by purchase, water easements and rights necessary for their purposes, and also the right to intercept and divert the flow of waters from the lands of riparian owners, and from persons owning or interested in the waters. The map required was duly filed, and plaintiff at once commenced to acquire riparian rights on Pocantico river near North Tarrytown village, which it contracted to supply with water. It also has contracts with the villages of Dobb's Ferry and Hastings, and is negotiating with others. Its contracts require the delivery of 1,000,000 gallons of water per day for each village. It had acquired most of the rights in the vicinity either by purchase or condemnation, and had, at the institution of this action, begun negotiations with one George Hart for his riparian rights, but had not yet secured them. The water privileges, both above and below Hart's land, had been secured, and the plaintiff had been diligently trying to acquire those not already owned. It had one reservoir above and one below Hart's land, and had another reservoir, known as the "High Service Reservoir," drawing water from the "Upper Dam Reservoir," and had expended $300,000 in the prosecution of its enterprise. With full knowledge of what plaintiff had done, was doing, and intended in the future, defendants, Seth Bird and others, constituting the board of water commissioners of the village of Tarrytown, proposed to locate a dam and reservoir on Hart's land, for the purpose of drawing water from the stream there to supply the village of Tarrytown, and undertook to acquire for their use riparian rights. Plaintiff thereupon began this action to enjoin defendants from such acquisition, on the ground that it would materially interfere with its rights. There was evidence from which the court, at special term, found that all the water was necessary for plaintiff's purposes. On the same day that plaintiff began proceedings to condemn Hart's land, defendants commenced similar proceedings. Defendants also began proceedings to condemn some of the same rights already purchased or condemned by plaintiff. The court found that if defendants carried out their plans it would injure plaintiff in its rights, and that defendants had no right to locate their dam as projected, and granted an injunction as prayed. Defendants appeal.

Argued before BARNARD and PRATT, JJ.

*Edward T. Lovatt,* for respondent.

PRATT, J. It is now found by the learned trial judge that these riparian rights appurtenant to Hart's land were necessary for the plaintiff's purposes. True, the evidence of this necessarily rests largely upon the opinion of witnesses; but it was scarcely possible to give any other evidence on that point, unless it should consist of the details of facts upon which the opinion was based. Some of these were given, or are apparent. The plaintiff's works were constructed, not simply with reference to the wants of the village at the time of their construction, but for the future. We can readily see how and why these opinions should be sound. Hence the finding upon this point seems reasonably sustained by the evidence. Assuming that fact, we fail to see how the defendants can be permitted to condemn and take any part of those rights. It might result in substantial destruction of the plaintiff's franchise, and that was scarcely contemplated by the laws authorizing con-

demnation. If defendants may take these rights, why may not some new company come and take them again, and so on, to the practical destruction of the public objects and benefits upon which the right to condemn depends? This is not the case of a street. We do not overlook the point that Hart's riparian rights have not yet been acquired by plaintiff; but that does not alter the difficulty. When plaintiff acquired its riparian rights appurtenant to other property they became something more than mere riparian rights. They were taken for *quasi* public uses. They retained all the elements of riparian rights, to which were added the uses for public purposes. Now, what is it that defendants propose to do? The essential feature of their scheme is that they propose to divert the waters of the river. That will be an injury to the riparian rights which plaintiff owns. Those rights might be condemned if they stood alone; but not the new rights which were superadded to and impressed upon them. These views seem to us to justify the decision of the learned trial judge. But it is also apparent that when plaintiff obtained all riparian rights of Brombacher's Sons that the same included all the surplus water that would flow over the plaintiffs' dam to the storage reservoir. Of course, the plaintiff could not go upon Hart's land, but Brombacher's Sons had a right to the natural flow of all the water that came down in streams from Hart's land. The findings of fact seem to be fully sustained by the evidence, and such findings justify the judgment. We find nothing in the exceptions prejudicial to the defendant.

Judgment affirmed, with costs. All concur.